IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES HASTY     :
          :  CIVIL ACTION
  v.       :
          :  NO. 12-4335
COUNTY OF MONTGOMERY, ET AL. :

SURRICK, J.           **FEBRUARY  28 , 2014**

**MEMORANDUM**

Presently before the Court are Defendants County of Montgomery and Correctional

Medical Care Inc.'s Motions to Dismiss (ECF No. 27), and Defendant Carillo's Motion to

Dismiss and Motion to Strike (ECF No. 25).  For the following reasons, Defendants' Motions

will be denied.

## I.  BACKGROUND

### A.  Factual Background[1]

Plaintiff James Hasty brings this section 1983 action against Defendants County of

Montgomery, Correctional Medical Care, Inc. ("CMC"), and Dr. Margaret Carillo, M.D., for

injuries that he sustained as a result of Defendants allegedly denying him medical care while he

was a pretrial detainee at the Montgomery County Correctional Facility ("MCCF" or the

"Prison").  Specifically, Plaintiff alleges that on September 3, 2010, he was admitted to MCCF

on pending criminal charges.  (Compl. ¶ 12.)  On September 13, 2010, he was prescribed

Risperdal by a psychiatrist at MCCF.  (*Id.* at ¶ 13; Pl.'s Resp. 2, ECF No. 29.)  The next day, he

developed priapism, which caused him to have "significant pain in his abdomen and genital area

---

[1] We view all of the facts and draw all reasonable inferences therefrom in the light most
favorable to Plaintiff, the non-moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852
(3d Cir. 2006).

and abnormal urination."  (Compl. ¶ 14.)[2]  From September 14 through September 17, Plaintiff

refused medication from CMC nurses because he believed that the medication was causing the

priapism.  (Compl. ¶ 15.)[3]  During this three day period, Plaintiff alleges that he repeatedly

requested medical care through the medical care request system.  (*Id*. at ¶ 16.) Plaintiff made

these requests both through the medical phone request system, and directly to correctional

officers and CMC medical staff, which he was directed to do by the recorded message on the

medical phone request system.  (*Id*.)  The recorded message instructed inmates to notify

correctional and other officers of the inmate's need for emergency medical care.  (*Id*.)  Plaintiff

further alleges that his requests were ignored, delayed, and denied.  (*Id*. at ¶ 17.)

　　　　Finally, on September 17, 2010, a physician's assistant examined Plaintiff and arranged

for him to be sent to Mercy Suburban Hospital, where he was treated and returned to the Prison.

(*Id*. at ¶¶ 17-18.)  On September 19, 2010, Plaintiff was transferred to Hahnemann University

Hospital, where he underwent surgery "and other extremely painful and debilitating medical

treatments," which resulted in a condition of permanent impotence.  (*Id*. at ¶ 19.)

### B.　　Procedural History

　　　　Plaintiff filed an Amended Complaint on December 6, 2012.  (Compl.)[4]  The Amended

Complaint asserts two claims:  (1) a civil rights claim pursuant to 42 U.S.C. § 1983 against all

---

[2] Priapism is a "persistent, usually painful, erection of the penis unrelated to sexual stimulation."  (Pl.'s Resp. 2 n.1.); *see also* Stedman's Medical Dictionary (28th ed. 2006) (defining priapism as "[p]ersistent erection of the penis, accompanied by pain and tenderness, resulting from a pathological condition rather than sexual desire").  Plaintiff asserts that priapism is a recognized complication of taking Risperdal.  (Pl.'s Resp. 2 n.1.)

[3] Dr. Carillo and the nurses worked at the Prison, but they were employed by CMC.  Dr. Carillo was at all relevant times the Medical Director at the Prison.  (Compl. ¶ 10.)

[4] Plaintiff filed his original complaint on July 31, 2012, against the County of Montgomery, CMC, Carillo, John Doe, and Jane Roe.  (*See* ECF No. 1.)  On October 23, 2012, we granted Plaintiff additional time to conduct discovery concerning the John Doe and Jane Roe

Defendants; and (2) a state law medical malpractice claim against CMC and Dr. Carillo.  On

August 29, 2012, Plaintiff filed certificates of merit as to Defendants CMC (ECF No. 4) and Dr.

Carillo (ECF No. 5).

On December 20, 2012, Dr. Carillo filed a Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(6) and Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) and Memorandum in support

thereof.  (Carillo Mot., ECF No. 25; Carillo Br., ECF No. 25.)  On December 28, 2012, the

County of Montgomery and CMC filed a Motion to Dismiss and Memorandum in support

thereof.  (Cnty Mot., ECF No. 27; Cnty Br., ECF No. 27.)  On January 9, 2013, Plaintiff filed a

joint Response to Defendants' Motions to Dismiss.  (Pl.'s Resp., ECF No. 29.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), "a pleading that states a claim for relief must

contain a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in

part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action,

Defendants, and to file an Amended Complaint.  (*See* ECF No. 18.)  Although Plaintiff filed a
certificate of merit as to John Doe and Jane Roe (ECF No. 10) on September 14, 20120, the
Amended Complaint does not include John Doe and Jane Roe defendants and does not name any
additional defendants.  (Am. Compl.)

supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678.  "While legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,'

but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d

Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

     In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the

claim and accept all of the complaint's well-pleaded facts as true.  *Id*. at 210-11.  Next, courts

determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

"'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of

the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting

*Iqbal*, 556 U.S. at 679).

## III.    DISCUSSION

     Plaintiff asserts a section 1983 claim against all Defendants and a state law malpractice

claim against CMC and Dr. Carillo.  With respect to the section 1983 claim, Plaintiff alleges that

he suffered permanent injuries as a result of being denied appropriate medical care while housed

as a pretrial detainee at the Prison.  Plaintiff contends that Defendants' failure to provide

adequate medical care was a direct result of policies, practices, and customs at the Prison that

were implemented, enforced, and ratified by Defendants.  Plaintiff further contends that these

policies, practices, and customs evidence a deliberate indifference on the part of Defendants to

Plaintiff's serious medical needs.  Specifically, Plaintiff alleges that Defendants:  (1) failed to establish and maintain a system that allowed inmates with serious medical conditions to receive treatment; (2) failed to train and supervise their prison and medical staff to recognize emergency medical situations and secure immediate care for individuals with such medical needs; and (3) failed to establish a proper system for review and consideration of an inmate's refusal of medication.  Plaintiff's state law claims against Dr. Carillo and CMC sound in negligence.  Specifically, Plaintiff alleges that Dr. Carillo and CMC owed a duty to Plaintiff to exercise the proper degree of care and skill in the medical treatment of Plaintiff, that they breached that duty by failing to exercise reasonable care and diligence, that Defendants' breach of duty proximately caused Plaintiff's injuries, and that Plaintiff is left permanently injured and impotent as a result.

All Defendants seek dismissal of the section 1983 action, and Dr. Carillo and CMC seek dismissal of the state law claims.  In addition, Dr. Carillo and CMC seek to strike Plaintiff's claim for punitive damages, and Dr. Carillo seeks to strike allegations in the Amended Complaint that relate to deliberate indifference, reckless behavior, and/or willful misconduct.

### A.    Section 1983 Claim for the Denial of Medical Care

#### 1.    *The County of Montgomery and CMC*

Generally, a municipality and private corporation cannot be held vicariously liable under section 1983.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).[5]  A plaintiff seeking to hold a public entity or municipality liable for the actions of its agents under *Monell* must show that a custom or policy of the entity caused the constitutional violation.  *Id.* at

---

[5] Private corporations such as CMC that the state contracts with to provide medical services to prison inmates are acting under state law for purposes of Section 1983.  *Connolly v. Oquendo*, No. 12-315, 2013 U.S. Dist. LEXIS 113084, at *5 (E.D. Pa. Aug. 8, 2013) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)).  Accordingly, by providing medical services to prisoners and pretrial detainees at the Prison, CMC was acting under color of state law for purposes of section 1983.  *Id.*

694.  To state a *Monell* claim for inadequate medical care against a municipality or a corporation acting under color of state law, a plaintiff must show a relevant policy or custom attributable to the municipality and "a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl., v. Brown*, 520 U.S. 397, 404 (1997).  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law," *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480), and "may be established by proof of knowledge and acquiescence," *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989).

Thus, a municipality, such as the County of Montgomery, or a private corporation acting under color of state law, such as CMC, may be liable under section 1983 in situations where a policymaker "made a deliberate choice to follow a course of action . . . from among various alternatives, and the policy chosen reflects a deliberate indifference to the constitutional rights" of citizens.  *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) (internal quotations omitted).  However, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Plaintiff argues that Defendants failed to adopt and implement policies and procedures necessary to ensure timely medical care, in that they:

6

a.      Fail[ed] to ensure that a proper system for medical assistance request was in operation;

b.      Ignor[ed] requests for medical assistance from inmates with serious medical conditions;

c.      Fail[ed] to provide adequate and sufficient medical and nursing staff to ensure that inmates with serious medical needs are provided with medical care;

d.      Fail[ed] to properly train, supervise and discipline medical and correctional staff with respect to their obligations to ensure that inmates with serious medical conditions receive timely and proper medical care;

e.      Fail[ed] to correct known deficiencies in the medical delivery system at the Prison that were likely to cause injury to inmates;

f.      Fail[ed] to properly provide for necessary medical test, hospitalization and other treatment for seriously ill inmates;

g.      Fail[ed] to provide proper training and supervision of medical and correctional staff with respect to procedures for provision of emergency medical care, upon request or by notice from an inmate; and

h.      Fail[ed] to have an adequate system to determine whether inmate refusal of prescribed medications indicates a serious medical problem that requires medical intervention.

(Am. Compl. ¶ 22.)  Plaintiff further alleges that he personally refused medication from the nurses because he thought it was causing the priapism, that he made repeated attempts to secure medical care through the phone request system, that he was instructed to, and did, make requests to medical and correctional officers in his housing area, and that he was not examined for three days, despite the repeated requests for medical assistance.  In addition, Plaintiff alleges that the failure on the part of Defendants to provide timely medical assistance directly resulted in his painful medical condition, resulting surgery, and permanent impotence.  Plaintiff's factual allegations, accepted as true, clearly support a plausible claim for relief under the theory that Defendants failed to adopt and implement policies and procedures necessary to ensure timely

medical assistance. *See Kenney v. Montgomery Cnty.*, No. 13-2590, 2013 U.S. Dist. LEXIS 137222, at *19-20 (E.D. Pa. Sept. 25, 2013) (declining to dismiss the plaintiff's *Monell* claim against the county and prison medical provider where plaintiff sufficiently alleged an unconstitutional policy of, among other things, failing to "establish policies, practices, and procedures to ensure that inmates at [the prison] receive appropriate care for serious illness").

Defendants make multiple arguments in response. We find these arguments unpersuasive. Initially, Defendants contend that Plaintiff's Complaint is defective because it fails to identify the policymaker or policymakers who authorized the unconstitutional policies or who promoted the practices that lead to the constitutional violations. However, Plaintiff has identified Dr. Carillo, supervisor of the CMC staff, as a policymaker and further states that all Defendants acted as policymakers that implemented the unconstitutional policy. Moreover, Defendants have not provided any legal authority, and we are aware of none, that would support dismissal of Plaintiff's claim at this early stage for failing to name specific officials at the County level that were responsible for promoting and implementing the alleged unconstitutional policy. In addition, contrary to Defendant's assertion, Plaintiff has identified an unconstitutional policy or custom in failing to have an adequate system in place that provides emergency medical care to inmates in need and failing to train and supervise their staff in responding to those medical needs. Furthermore, Plaintiff "is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into [the alleged] policies, and explain exactly how these precisely alleged policies caused or contributed to [plaintiff's] injuries." *Kenney*, 2013 U.S. Dist. LEXIS 137222, at *19 (citation omitted).

Furthermore, Defendants' argument that Plaintiff's allegation of an isolated incident is insufficient under *Monell* is premature at this stage. Plaintiff is entitled to discovery on other

violations that may have occurred as a result of Defendants' unconstitutional policy.  The

argument is also flawed because Plaintiff may nevertheless establish a claim if "proof of the

[single] incident includes proof that it was caused by an existing, unconstitutional municipal

policy, which policy can be attributed to a municipal policymaker."  *Okla. City v. Tuttle*, 471

U.S. at 823-24.  The focus of Plaintiff's Amended Complaint, as detailed above, is on how

Defendants' policies and procedures failed to ensure that a proper system for medical assistance

requests was in operation for *all* inmates, not just Plaintiff.  (Am. Compl. ¶ 22.)  The fact that

Plaintiff "focuses on the effect of this policy or practice on one inmate is inconsequential."

*Kenney*, 2013 U.S. Dist. LEXIS 137222, at *17.

      In addition to alleging an unconstitutional policy or custom, Plaintiff must also allege

facts showing that Defendants acted with deliberate indifference to his constitutional rights.

Deliberate indifference to the serious medical needs of inmates is prohibited by the Eighth

Amendment's prohibition of cruel and unusual punishment for sentenced prisoners and by the

Fourteenth Amendment for pretrial detainees.  *Id*. at 104; *see also Giles v. Kearney*, 571 F.3d

318, 330 (3d Cir. 2009) ("The question under the Eighth Amendment is whether prison officials,

acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious

damage to his future health.") (internal quotations omitted).

      Because Plaintiff was a pretrial detainee at the time of the alleged injury, his section 1983

claim arises under the Due Process Clause of the Fourteenth Amendment.  *Natale v. Camden

Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  The Third Circuit has recognized,

however, that the Fourteenth Amendment "affords pretrial detainees protections at least as great

as the Eighth Amendment protections available to a convicted prisoner."  *Id*. (internal quotations

omitted).  Accordingly, when considering a pretrial detainee's claim for failure to provide

medical care, district courts use as a baseline the standard applicable to a convicted prisoner's Eighth Amendment claim.  *See id.*; *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (not precedential).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *McClintic v. Pa. Dept. of Corr.*, No. 12-6642, 2013 U.S. Dist. LEXIS 160898, at *25 (E.D. Pa. Nov. 12, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Deliberate indifference is a subjective standard of liability, which "requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Neither "[m]ere medical malpractice" nor "mere disagreements over medical judgment" are sufficient to establish deliberate indifference.  *White v. Napolean*, 897 F.2d 103, 108, 110 (3d Cir. 1990); *see also Burgos v. Phila. Prison Sys.*, 760 F. Supp. 2d 502, 508 (E.D. Pa. 2011) ("Accordingly, when some medical care is administered by officials, even if it arguably falls below the generally accepted standard of care, that medical care is often sufficient to rebut accusations of deliberate indifference.").

In order to show deliberate indifference, a plaintiff must allege (1) a serious medical need, and (2) behavior on the part of the prison officials that constitutes deliberate indifference to that need.  *Estelle*, 429 U.S. at 104; *Natale*, 318 F.3d at 582.  Defendants do not dispute that Plaintiff's priapism was a serious medical need.  Therefore, we must determine whether Plaintiff has alleged facts sufficient to establish that Defendants' conduct constituted a deliberate indifference to that serious medical need.[6]

---

[6] A medical need is considered "serious" if it "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted).  A serious medical need is also present "if

Plaintiff alleges that he was prescribed Risperdal on September 13, 2010, and that as a result, the next day he developed priapism, which caused significant pain in his abdomen and genital area.   From September 14 through September 17, Plaintiff refused the medication from CMC nurses.  During this three day period, Plaintiff repeatedly requested assistance for his priapism. These requests were made through the medical phone request system, directly to correctional officers, and to CMC medical staff.  The phone request system had a recorded message which instructed inmates to notify correctional and other officers of the inmate's need for emergency medical care.  Plaintiff did just that.  All of Plaintiff's requests were ignored.  It was not until September 17, 2010, three days after exhibiting symptoms of priapism, that a physician assistant finally examined Plaintiff and arranged for his transfer to a hospital for treatment.  Due to Defendants' delay in providing medical assistance, Plaintiff was forced to undergo a painful surgery which resulted in permanent impotence.  Accepting Plaintiff's factual assertions as true, which we must, it is reasonable to infer that, if a proper medical referral system had been in place at the Prison, Plaintiff would have received treatment sooner and avoided the resulting permanent disability.[7]

---

unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care . . . .  *Id.*  (internal citation omitted).  Plaintiff has alleged sufficient facts to support a finding that the priapism he suffered while a pretrial detainee at the Prison was a serious medical need, in satisfaction of the first prong of the deliberate indifference test.

[7] Defendants mischaracterize Plaintiff's section 1983 claim as one that asserts inadequate care, or a difference in opinion as to proper medical treatment.  It is true that the Eighth Amendment is not violated by mere assertions that additional or different medical care should have been provided to Plaintiff.  *See Estelle*, 429 U.S. at 102 (holding that a physician's decision not to perform certain tests is not actionable under the Eighth Amendment since these decisions are considered medical judgments); *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (distinguishing cases where an inmate alleges a complete denial of care from cases where an inmate alleges inadequate medical treatment, and noting that where the "dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").  However, this is not a case where some treatment was provided, but Plaintiff disagreed with the

Deliberate indifference may be evidenced by intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, and denial of reasonable requests for treatment that results in suffering or risk of injury. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Here, the Amended Complaint "does not allege a mere isolated episode of inadvertence, but persistent conduct in the face of resultant pain and risk of permanent injury." *White*, 897 F.2d at 109. At this early stage of the proceedings, Plaintiff's allegations of repeated requests for medical assistance through the telephone request system and directly to medical and other staff at the Prison, coupled with the apparent but ignored medical need—symptoms of priapism—are sufficient to meet the minimum pleading requirements to establish deliberate indifference under the due process clause of the Fourteenth Amendment. Plaintiff is not required to show a complete failure on the part of Defendants to provide care. Rather, "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." *Lanzaro*, 834 F.2d at 346. Accordingly, the County of Montgomery and CMC's request to dismiss Plaintiff's section 1983 claim will be denied.

> 2.    *Dr. Carillo*

Plaintiff asserts a section 1983 claim against Dr. Carillo in her individual capacity as it relates to her role as the supervisor of the CMC medical staff. (Am. Compl. ¶ 10.) Dr. Carillo argues that she cannot be held liable under section 1983 because she lacks personal involvement in Plaintiff's alleged constitutional deprivations. Specifically, Dr. Carillo contends that the Amended Complaint lacks allegations that she was personally involved in ignoring or responding

---

course taken by the Prison medical staff. Plaintiff does not take issue with the type and extent of care that he received. Instead, the facts alleged support a theory that Defendants, including Dr. Carillo, wholly ignored Plaintiff's requests for medical treatment for a serious medical condition during a critical three-day period, which resulted in Plaintiff suffering a permanent injury.

to requests for Plaintiff's medical care.  In response, Plaintiff argues that the Amended

Complaint specifically alleges that Dr. Carillo is sued as an authorized decision maker for the

Prison on medical care issues, that she was the "supervising physician" for CMC at the prison,

and that she failed to provide a system whereby inmates had adequate access to medical care and

services.  (Pl.'s Resp. at 11.)

Supervisory personnel or administrators cannot be liable for damages under section 1983

on a theory of *respondeat superior*; rather, to be liable for a section 1983 violation, an individual

defendant must have been personally involved in the deprivation of the plaintiff's rights.

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997); *Rode v. Dellarciprete*, 845

F.2d 1195, 1207 (3d Cir. 1988); *McQueen v. Phila. Hous. Auth.*, No. 02-8941, 2003 U.S. Dist.

LEXIS 19844, at *9 (E.D. Pa. Sept. 26, 2003); *see also Andrews*, 895 F.2d at 1478 (noting that

"there must be some affirmative conduct by the supervisor that played a role in the

discrimination").  The Third Circuit has identified two viable theories of supervisor liability.

*Santiago v. Warminster Twp.*, 629 F.3d, 121, 129 n.5 (3d Cir. 2010).  A supervisor can be liable

if he or she "established and maintained a policy, practice or custom which directly caused [the]

constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372

F.3d 572, 586 (3d Cir. 2004)).  A supervisor can also be liable if he or she "participated in

violating [the] plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations."  *Id.* (quoting *Luzerne Cnty.*

*Juvenile Det. Ctr.*, 372 F.3d at 586).  It is not sufficient for a plaintiff to allege that an individual

had constructive knowledge of his or her subordinates' unconstitutional conduct simply by virtue

of his or her supervisory position.  *Regan v. Twp. of Lower Merion*, 1999 U.S. Dist. LEXIS

17219, at *15 (E.D. Pa. Oct. 28, 1999); *see also DeBellis v. Kulp*, 166 F. Supp. 2d 255, 277 (E.D.

13

Pa. 2001) ("The fact that [the defendants] are in supervisory positions does not, standing alone, establish their liability.").

The Amended Complaint states that Defendants, including Dr. Carillo, ignored and denied Plaintiff's repeated requests for medical assistance.  (Am. Compl. ¶ 17.)  The Amended Complaint states that Defendants, including Dr. Carillo, failed to establish a medical referral system that was capable of providing immediate medical care to an inmate with an emergency medical condition.  (*Id*. at ¶ 21.)  The Amended Complaint also alleges that the failure to provide Plaintiff with necessary medical care was directly caused by policies, practices, and customs at the prison that were implemented, enforced, ratified, or known by Defendants.  (*Id*. at ¶ 22.)  As discussed above, Plaintiff has alleged sufficient facts to show that it was this policy or practice that directly caused his harm.  *See* supra at Section A.1.

We recognize that the Complaint does not allege that Plaintiff spoke directly to Dr. Carillo, or that Dr. Carillo was specifically on notice that others under her control were ignoring Plaintiff's requests for immediate medical attention.  However, the Complaint does state a plausible claim that Dr. Carillo, as the authorized decision maker and policymaker for the Prison and supervisor of the medical personnel, failed to provide an adequate system where inmates had access to emergency medical care.  The facts alleged in the Complaint establish deliberate indifference as it relates to the claim against Dr. Carillo.  We will not dismiss Plaintiff's claim against Dr. Carillo at this stage of the proceedings.  If, after discovery, the facts do not support a viable claim of supervisor liability against Dr. Carillo, she may move for summary judgment.

### B.    State Law Medical Negligence Claims

CMC and Dr. Carillo seek to dismiss the state law negligence claims asserted against them.  Both Defendants argue that Plaintiff failed to timely file the required certificate of merit,

which under Pennsylvania law, must accompany claims for professional liability brought against certain licensed professionals.  In addition, CMC contends that Plaintiff's allegations do not support a claim for state law medical negligence.

1.      *Certificate of Merit Requirement*

Pennsylvania requires a plaintiff to file a certificate of merit within 60 days after filing a complaint asserting a claim for professional negligence.  *See* Pa. R. Civ. P. 1042.3(a); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 260 (3d Cir. 2011).  Specifically, Rule 1042.3(a) of the Pennsylvania Rules of Civil Procedure provides:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
>> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>>
>> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>>
>> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a).  The requirements of Rule 1042.3(a) are substantive in nature, and apply to state law medical negligence claims filed in federal court.  *Liggon-Redding*, 659 F.3d at 260.  Therefore, to maintain a state law medical malpractice claim against CMC and Dr. Carillo, Plaintiff must have filed a certificate of merit within 60 days of the filing of his original complaint.  *See O'Hara v. Randall*, 879 A.2d 240, 245 (Pa. Super. Ct. 2005) (noting that a

certificate of merit must be filed within 60 days of the original complaint, and not within 60 days

of the amended complaint, unless the plaintiff seeks and is granted an extension for good cause).

Plaintiff filed his original Complaint on July 31, 2012.  (*See* ECF No. 1.)  Plaintiff had

until September 29, 2012 to file certificates of merit in support of his medical negligence claims

against Dr. Carillo and CMC.  Plaintiff filed three certificates of merit.  On August 29, 2012, he

filed a certificate of merit against CMC and a certificate of merit against Dr. Carillo.  (*See* ECF

Nos. 4, 5.)  On September 14, 2012, Plaintiff filed a certificate of merit against John Doe and

Jane Roe.  (*See* ECF No. 10.)  Therefore, Plaintiff filed the required certificate of merits against

CMC and Dr. Carillo within 60 days in compliance with Rule 1042.3.

CMC contends that it was not enough that Plaintiff filed a certificate of merit against

CMC, but that he was also required to file certificates with respect to each of the other licensed

professionals for whom CMC is vicariously liable.  CMC relies on a note to Rule 1042.3, which

states:

> A certificate of merit, based on the statement of an appropriate licensed
> professional required by subdivision (a)(1), must be filed as to the other licensed
> professionals for whom the defendant is responsible. The statement is not required
> to identify the specific licensed professionals who deviated from an acceptable
> standard of care.

Rule 1042.3(a)(2) note.  CMC's argument is flawed for two reasons.  First, CMC ignores the fact

that Plaintiff timely filed a certificate of merit against Dr. Carillo, who was employed by CMC.

Therefore, Rule 1042.3(a) is satisfied as to CMC.  Second, Plaintiff claims that, despite his

diligent efforts to obtain discovery of the names of nurses and other medical personnel that

provided treatment to, or otherwise interacted with Plaintiff during the relevant time frame,

Defendants have circumvented Plaintiff's efforts to get this additional information.[8]  We are

---

[8] Defendants contend that Plaintiff was entitled to and did in fact depose nurses and other
medical personnel to obtain information to name additional defendants.  However, the

satisfied that it would be inappropriate at this stage to deny Plaintiff the opportunity seek

additional information through discovery with regard to this claim.[9]

Plaintiff has complied with the requirements of Rule 1042.3(a) as to both Dr. Carillo and

CMC.  Defendants' request to dismiss the state law medical negligence claim on this basis will

be denied.

        2.    *Allegations in Support of Medical Negligence under Pennsylvania Law*

CMC also seeks dismissal of Count 2 on the basis that Plaintiff failed to allege sufficient

facts to support a medical negligence claim.[10]  CMC contends that Plaintiff alleges nothing more

than conclusory allegations in support of his medical negligence claim, which is not sufficient to

satisfy pleading standards.

To state a claim of negligence against CMC, the corporate Defendant, Plaintiff must

allege that:  (1) CMC deviated from the standard of care; (2) CMC had actual or constructive

---

depositions revealed that not one nurse or other medical professional recalled having interacted
with Plaintiff.  Plaintiff contends that "the failure of the defendants to properly identify the
nurses who were charged with dispensing the prescription drug to [Plaintiff] and the blanket
denial by all of these personnel that any request was made would be sufficient to prove
ratification of the unconstitutional denial of medical care."  (Pl.'s Resp. 4.)  Certainly, evidence
demonstrating attempts by Defendants to thwart Plaintiff's investigation may provide support for
Plaintiff's constitutional claims.

[9] Dr. Carillo also makes the argument that the certificate of merit filed against her is
flawed because Plaintiff also failed to file certificates of merit as to the "other licensed
professionals" for which Dr. Carillo should be held vicariously liable.  However, the certificate
of merit filed against Dr. Carillo alleges negligence on the part of Dr. Carillo both individually
and vicariously.  Accordingly, Dr. Carillo's argument must be rejected.

[10] Dr. Carillo does not make any substantive arguments as to the sufficiency of Plaintiff's
claim for medical negligence.  Dr. Carillo argues that the claim should be dismissed because
Plaintiff has failed to comply with the requirements of Rule 1042.3(a).  As noted above, this
argument is without merit.  Dr. Carillo also requests that the Court deny exercising supplemental
jurisdiction over Plaintiff's state law claims against Dr. Carillo in the event that the section 1983
claim against her is dismissed.  Since Plaintiff's section 1983 claims will survive dismissal, we
need not consider whether exercising supplemental jurisdiction over the state law claims is
appropriate at this time.

notice of the defects or procedures that created the harm; and (3) that CMC's acts or omissions were a substantial factor in bringing about the harm. *Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1045 (Pa. Super. Ct. 2006).   Plaintiff's allegations are sufficient to support a medical negligence claim against CMC.   Specifically, Plaintiff alleges that CMC had a duty to exercise reasonable diligence and skill in the provision and supervision of medical and nursing care at the Prison. (Am. Compl. ¶ 30.)  Plaintiff also alleges that CMC was negligent in failing to establish and maintain a system that provides inmates with adequate access to medical care, and in failing to conform to the requisite standard of care.  (*Id*. at ¶ 33.)[11]  Finally, Plaintiff alleges that CMC's acts or omissions proximately caused Plaintiff's illness, permanent disability, and impotence.[12]

Accordingly, CMC and Dr. Carillo's request to strike the medical negligence claim asserted against them will be denied.

### C.    Motion to Strike Punitive Damages

Defendants CMC and Dr. Carillo request that the Court strike Plaintiff's claim for punitive damages.  Defendants argue that Plaintiff's claims amount to only a three-day delay in receiving a physical examination, which does not rise to the level of outrageous behavior,

---

[11] The Amended Complaint also states that Defendants were negligent in failing to: properly recognize Plaintiff's need for medical care; properly diagnose Plaintiff's condition; perform a complete examination; take an adequate history; timely refer Plaintiff to a physician for evaluation and treatment; consult with a urologist or other specialist; monitor Plaintiff's condition after being made aware of it; understanding the significance of Plaintiff's development of priapism; appreciate the significance of Plaintiff's pain in the lower abdominal and genital area; and appreciate the significance of Plaintiff's difficulty in urinating.  (Am. Compl. ¶ 33.)

[12] Although Dr. Carillo does not seek to dismiss the medical negligence claim on sufficiency grounds, the Amended Complaint also states a plausible claim against Dr. Carillo.  In order to state a claim of medical negligence against Dr. Carillo in her individual capacity, Plaintiff must allege that:  (1) Dr. Carillo owed a duty to Plaintiff; (2) she breached that duty; (3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm suffered by Plaintiff; and (4) the damages suffered by Plaintiff were a direct result of the harm. *Ocasio v. Prison Health Servs.*, 979 A.2d 352, 355 (Pa. Super. Ct. 2009).  Plaintiff has alleged sufficient facts against Dr. Carillo for medical negligence.

callousness, or willful action necessary for the imposition of punitive damages.[13]  In response,

Plaintiff argues that punitive damages are appropriate upon a showing of "reckless" conduct or

"callous indifference," and that he has made such a showing.    (Pl.'s Resp. at 11) (quoting *Smith*

*v. Wade*, 461 U.S. 30 (1983)).  Plaintiff further contends that if he is able to sufficiently allege

deliberate indifference, a standard of culpability more serious than recklessness, he is entitled to

jury consideration of both compensatory and punitive damages.  Proof of malicious intent is not

required.

 Punitive damages may be awarded in a claim under section 1983 "when the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others."  *Brennan v. Norton*, 350 F.3d 399, 428

(3d Cir. 2003) (quoting *Smith*, 461 U.S. at 56); *see also Keenan v. City of Phila.*, 983 F.2d 459,

469-70 (3d Cir. 1992) (noting that punitive damages are appropriate upon a showing that the

defendants acted "'with a reckless or callous disregard of, or indifference to, the rights and safety

of others.'" (quoting *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir.1987))).  Under Pennsylvania

law, punitive damages are appropriate only under limited circumstances where there is

outrageous conduct because of "evil motives" or "reckless indifference."  *Martin v. Johns-*

*Manville Corp.*, 494 A.2d 1088 (Pa. 1985); *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984);

*Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963).  In addition, punitive damages may be

appropriate against supervisors in their individual capacity, where the supervisor "condoned,

---

[13] CMC, in part, relies upon *Woods v. ERA Med LLC*, No. 08-2495, 2009 U.S. Dist. LEXIS 3965 (E.D. Pa. Jan. 21, 2009), for the proposition that striking punitive damages at the motion to dismiss stage is appropriate.  *Woods* is inapposite.  In *Woods*, the court found that striking punitive damages at the motion to dismiss stage was appropriate because punitive damages do not apply to breach of contract or promissory estoppel claims.  *Id.* at *30-31. Plaintiff does not assert a breach of contract or promissory estoppel claim here, but instead seeks damages under a theory of state law medical negligence.

approved, acquiesced, tolerated, and allowed" a subordinate's behavior to continue.  *Mitros v. Cooke*, 170 F. Supp. 2d 504, 508 (E.D. Pa. 2001).

Plaintiff alleges that, for a critical three-day period, Defendants ignored Plaintiff's pleas for medical assistance.  He alleges that Defendants "failed, with deliberate indifference, to provide necessary and proper medical care," which resulted in his pain and suffering and permanent impotence.  (Am. Compl. ¶¶ 26-28.)  We will defer ruling on Plaintiff's claim for punitive damages at this juncture.  Plaintiff has alleged sufficient facts to support a plausible showing that CMC and Dr. Carillo acted with reckless or callous indifference to Plaintiff's medical needs.  *See Muhammed v. Pawlowski*, No. 11-5004, 2012 U.S. Dist. LEXIS 30698, at *21 (E.D. Pa. Mar. 7, 2012) (declining to dismiss the plaintiff's claim for punitive damages where the allegations showed that the defendants' conduct was deliberate and outrageous in providing medical treatment).  Accordingly, Dr. Carillo's and CMC's request to strike Plaintiff's claim for punitive damages will be denied.[14]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be denied.  An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

---

[14] We will also deny Dr. Carillo's request to strike specific paragraphs of the Amended Complaint that allege deliberate indifference, reckless behavior, and willful misconduct.  We have determined that Plaintiff's section 1983 and medical negligence claims against Dr. Carillo should survive dismissal.  Plaintiff is entitled to conduct discovery to develop these allegations.